SO ORDERED: February 16, 2016.


Robyn L. Moberly
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| PEDRO WESLEY PAYAN | ) CASE NO. 15-4473-RLM-13 |
| | ) |
| Debtor | ) |
| _____ | ) |

**ORDER GRANTING DEBTOR'S MOTION FOR SANCTIONS**

This matter came before the court on December 14, 2015 upon the Motion for Sanctions filed by the debtor, seeking sanctions against Encompass Federal Credit Union ("Encompass") for its alleged violation of the stay. The Court finds that sanctions are warranted.

*Background*

The debtor maintained a checking account at Encompass into which his biweekly paycheck was directly deposited. Encompass loaned the debtor money to buy two cars in May, 2014. The debtor's checking account was set up for car payments to be deducted from the account via ACH debit about the same time the debtor's paycheck was directly deposited into it.

1

The debtor filed this chapter 13 case on May 22, 2015. On July 6, 2015, Encompass filed a proof of claim in the amount of $7472.91. The debtor's confirmed chapter 13 plan provided that Encompass held a $5300 secured claim to be paid at 4.25%.

Tammi Delph, Encompass's bankruptcy specialist, "coded" the debtor's account to denote that the account holder had filed bankruptcy as soon as she received notice of the debtor's bankruptcy filing, believing that the coding would halt the ACH debit function and cancel the automatic car payment deduction from the debtor's account. Unfortunately, Encompass had recently installed a new computer data system which did not halt the deduction from the account, as the prior computer program would have done. While Delph checked her voice mail messages daily, there was no internal monitoring or reporting system that alerted Delph that deductions continued to be taken from the account, despite the bankruptcy "coding" to the account. Delph personally did not become aware that the coding did not stop the automatic deduction under the new computer system until early November, 2015, when she received a copy of the debtor's motion for sanctions. Upon receiving the motion, she immediately reversed the payments and credited the debtor's account for $1329.85, the full amount which had been deducted from the debtor's account post-petition.

The debtor himself did not notice that Encompass was continuing to deduct the car payments from his checking account until mid-September, 2015 when his financial circumstances worsened. The debtor's wife testified that she contacted Encompass three times before the deduction was reversed. The first contact was made in mid-September when she went into Encompass's office and spoke with branch manager Suzie Fitzgerald, who tried to call Tammi Delph. The second contact was made in mid-October when Mrs. Payan left a voicemail message for an Encompass employee named "John", a loan officer, about the October 16th deduction. Apparently, the deduction was stopped for a brief period of time as a result of that call, but the deduction resumed on October 30th. Thus, Mrs. Payan made the third contact on October 30th when she either came to Encompass's offices or called Suzie Fitzgerald after she checked online and noticed the deduction from the account. For her part, Suzie Fitzgerald recalled that the debtor's wife had left her a voicemail message at the

2

end of October and testified that she returned the call and advised the debtor's wife to call Tammi Delph as it was not her duty or within her authority to handle bankruptcy matters.  Fitzgerald may have received a call from the debtor's attorney before the end of October, but it was in regard to another case, and she testified that she never received a call from the debtor attorney's paralegal about the deduction in this case. Fitzgerald had no recollection of receiving any call from John, the loan officer, regarding this account and was not aware until Mrs. Payan's testimony at trial that Mrs. Payan had contacted John about the deductions from the account.

### *Discussion*

The filing of a bankruptcy petition stays all acts to collect a pre-petition debt under 11.U.S.C. §362(a) (6) and the stay that is triggered upon the filing of the petition is "one of the most fundamental and important protections given to debtors under the Bankruptcy Code." *In re Highsmith*, 542 B.R. 738, 746 (Bankr. M. D. N. C. 2015).  A creditor who willfully violates the stay may be liable for actual damages, attorney fees, and, in egregious cases, punitive damages under §362(k).  To recover damages, a debtor must prove by a preponderance of the evidence that (1) a bankruptcy petition was filed; (2) the debtor is an individual; (3) the creditor had notice of the petition; (4) the creditor's actions were willful and violated the stay; and (5) the debtor is entitled to relief under §362(k).  *In re Ellett*, 519 B.R. 525, 529 (Bankr. S. D. Ind. 2014).  Encompass argues that it did not intend to deduct the payments post-petition because the deduction was attributable to computer error and therefore the stay violation was not willful. However, the debtor need not show that Encompass intended specifically to violate the stay by continuing to deduct payments; he need only show that Encompass intended to commit the act that led to the stay violation.  *Id.*; *Highsmith* at 748.

A creditor is obligated to terminate certain acts commenced pre-petition if they have the post-petition effect of collecting a debt.  *In re Kuzniewski*, 508 B.R. 678, 687 (Bankr. N. D. Ill. 2014).  The obligation applies not only to "coerced" transfer of funds (such as garnishments) but also voluntarily-initiated deductions.  *Id.; s*ee also, *In re Hellums*, 772 F.2d 379, 381 (7th Cir. 1985) ("[w]e hold that Congress intended the stay

3

of section 362(a)(6) to apply to automatic (as well as coerced) transfer and application of post-petition funds to the pre-petition debts of Chapter 7 debtors"). "Where a debtor voluntarily initiates an automatic payroll deduction arrangement to pay a pre-petition debt…the creditor violates the stay by continuing to deduct such amounts post-petition without the debtor's formal post-petition consent". *Kuzniewski* at 687.  Failing to stop multiple stay violations because of "computer error" is not a defense because a creditor should have sufficient processes in place to protect against ongoing stay violations. *Highsmith*, at 749.  Furthermore, inaction following a systematic error that results in a stay violation itself is a stay violation.  *Id.*, *Kuzniewski* at 686 ("Failure to take 'reasonable steps' to remedy a prior stay violation in itself violates the automatic stay"); see also, *In re Drake*, 2015 WL 393408 at *3 (Bankr. M. D. N. C. January 6, 2015).

In *Drake*, a credit union relied on a coding system to stop sending billing notices to debtors.  The new computer system failed to pick up the code and a billing statement was sent to the debtors post-petition.  The trustee notified the credit union that it was in violation of the stay, but the credit union failed to correct the computer glitch and a subsequent billing statement was sent to the debtors.  The court found that, while the first post-petition billing statement may not have been sent intentionally, the subsequent ones had been because the credit union was on notice of the bankruptcy.  It found that the credit union's inaction amounted to a willful violation. *Drake* at *3.

Encompass knew of the bankruptcy no later than July 6th because it filed with the bankruptcy court a proof of claim on that date.  Here, it was undisputed that Mrs. Payan contacted Encompass no fewer than three times between mid-September and late October and talked to both Suzie Fitzgerald and a loan officer by the name of John.  Fitzgerald made no more than a perfunctory attempt to report the violation to Tammi Delph and apparently was not authorized to halt the deductions herself.  Despite the first contact in mid-September, Delph did not learn that the new computer system had not halted the deductions until early November.  Encompass had no internal monitoring system to verify that deductions were no longer being taken out of bankruptcy coded accounts and Delph had no periodical status reports to track the coded accounts.  Encompass's inaction to remedy the initial stay violation is itself a willful violation of the stay.

  The debtor filed his bankruptcy in May but did not discover that payments were still being deducted from his account until mid-September.  Between mid-September and late October, the debtor's wife notified Encompass three times of the bankruptcy in an attempt to halt the deductions.  Encompass did not credit the account and deposit the wrongfully deducted funds until early November.  In the six months between the petition date and the return of the funds, the debtor experienced deepening financial distress which could have been ameliorated had the car payments not been deducted from his account.  The Court finds that $500 adequately compensates the debtor for the loss of funds during this period.  Although the deducted funds had been redeposited in the debtor's account as of the December 14th hearing, the debtor's attorney nonetheless was forced to gather sufficient information, and draft and file the motion for sanctions to stop the deductions.  The Court finds that the debtor's attorney shall be awarded fees of $1300 (4 hours at $325/ hr.).  Encompass is ordered to pay the sum of $500 to the Debtor and $1300 to Mr. Steven P.Taylor within thirty (30) days of the date of this Order.

# # #